# Exhibit 1

**NOTE:** This section, as added by Laws 2024, chapter 121, article 5, section 12, is effective July 31, 2025, except that postsecondary institutions regulated by the Office of Higher Education are not required to comply until July 31, 2029. Laws 2024, chapter 121, article 5, section 14.

### 325M.21 PREEMPTION OF LOCAL LAW; SEVERABILITY.

(a) Sections 325M.10 to 325M.21 supersede and preempt laws, ordinances, regulations, or the equivalent adopted by any local government regarding the processing of personal data by controllers or processors.

(b) If any provision of sections 325M.10 to 325M.21 or the application of sections 325M.10 to 325M.21 to any person or circumstance is held invalid, the remainder of sections 325M.10 to 325M.21 or the application of the provision to other persons or circumstances is not affected.

**History:** *2024 c 121 art 5 s 13*

**NOTE:** This section, as added by Laws 2024, chapter 121, article 5, section 13, is effective July 31, 2025, except that postsecondary institutions regulated by the Office of Higher Education are not required to comply until July 31, 2029. Laws 2024, chapter 121, article 5, section 14.

## SOCIAL MEDIA MANIPULATION

### 325M.30 CITATION.

Sections 325M.30 to 325M.34 may be cited as the "Prohibiting Social Media Manipulation Act."

**History:** *2024 c 114 art 3 s 63*

**NOTE:** This section, as added by Laws 2024, chapter 114, article 3, section 63, is effective July 1, 2025. Laws 2024, chapter 114, article 3, section 63, the effective date.

### 325M.31 DEFINITIONS.

(a) For purposes of sections 325M.30 to 325M.34, the following terms have the meanings given.

(b) "Accessible user interface" means a way for a user to input data, make a choice, or take an action on a social media platform in two clicks or fewer.

(c) "Account holder" means a natural person or legal person who holds an account or profile with a social media platform.

(d) "Account interactions" means any action that a user can make within a social media platform that could have a negative impact on another account holder. Account interactions include but are not limited to:

(1) sending messages or invitations to users;

(2) reporting users;

(3) commenting on, resharing, liking, voting, or otherwise reacting to users' user-generated content; and

(4) posting user-generated content or disseminating user-generated content to users.

Actions that have no impact on other users, including viewing user-generated content or public content, are not account interactions.

(e) "Algorithmic ranking system" means a computational process, including one derived from algorithmic decision making, machine learning, statistical analysis, or other data processing or artificial intelligence techniques, used to determine the selection, order, relative prioritization, or relative prominence of content from a set of information that is provided to a user on a social media platform, including search results ranking, content recommendations, content display, or any other automated content selection method.

(f) "Conspicuously" means the information is presented in a manner, given the information's size, color, contrast, location, and proximity to any related information, as to be readily noticed and understood by a reasonable user.

(g) "Content" means any media, including but not limited to written posts, images, visual or audio recordings, notifications, and games, that a user views, reads, watches, listens to, or otherwise interacts or engages with on a social media platform. Content includes other account holders' accounts or profiles when recommended to a user by the social media platform.

(h) "Engage" or "engagement" means a user's utilization of the social media platform.

(i) "Expressed preferences" means a freely given, considered, specific, and unambiguous indication of a user's preferences regarding the user's engagement with a social media platform. Expressed preferences must not be based on the user's time spent engaging with content on the social media platform or on the use of features that do not indicate explicit preference, including comments made, posts reshared, or similar actions that may be taken on content the user perceives to be of low quality. Expressed preferences must not be obtained through a user interface designed or manipulated with the substantial effect of subverting or impairing a user's decision making.

(j) "Social media platform" means an electronic medium, including a browser-based or application-based interactive computer service, Internet website, telephone network, or data network, that allows an account holder to create, share, and view user-generated content for a substantial purpose of social interaction, sharing user-generated content, or personal networking. Social media platform does not include:

(1) an Internet search provider;

(2) an Internet service provider;

(3) an email service;

(4) a streaming service, online video game, e-commerce, or other Internet website where the content is not user generated but where interactive functions enable chat, comments, reviews, or other interactive functionality that is incidental to, directly related to, or dependent upon providing the content;

(5) a communication service, including text, audio, or video communication technology, provided by a business to the business's employees and clients for use in the course of business activities and not for public distribution, except that social media platform includes a communication service provided by a social media platform;

(6) an advertising network with the sole function of delivering commercial content;

(7) a telecommunications carrier, as defined in United States Code, title 47, section 153;

(8) a broadband service, as defined in section 116J.39, subdivision 1;

(9) single-purpose community groups for education or public safety;

(10) teleconferencing or video-conferencing services that allow reception and transmission of audio and video signals for real-time communication, except that social media platform includes teleconferencing or video-conferencing services provided by a social media platform;

(11) cloud computing services, which may include cloud storage and shared document collaboration;

(12) providing or obtaining technical support for a platform, product, or service; or

(13) a platform designed primarily and specifically for creative professional users, as distinct from the general public, to share their portfolio and creative content, engage in professional networking, acquire clients, and market the creative professional user's creative content and creative services through facilitated transactions.

(k) "Time sensitive" means content that is welcomed under a user's expressed preferences and that has significantly reduced value to the user with the passing of time.

(l) "User" means a natural person who is located in Minnesota and who holds an account or profile with a social media platform.

(m) "User-generated content" means any content created by an account holder that is uploaded, posted, shared, or disseminated on the social media platform.

**History:** *2024 c 114 art 3 s 64*

**NOTE:** This section, as added by Laws 2024, chapter 114, article 3, section 64, is effective July 1, 2025. Laws 2024, chapter 114, article 3, section 64, the effective date.

**325M.32 SCOPE; EXCLUSIONS.**

(a) A social media platform is subject to sections 325M.30 to 325M.34 if the social media platform:

(1) does business in Minnesota or provides products or services that are targeted to residents of Minnesota; and

(2) has more than 10,000 monthly active account holders located in Minnesota.

(b) For purposes of sections 325M.30 to 325M.34, a social media platform may determine whether an account holder is located in Minnesota based on:

(1) the account holder's own supplied address or location;

(2) global positioning system-level latitude, longitude, or altitude coordinates;

(3) cellular phone system coordinates;

(4) Internet protocol device address; or

(5) other mechanisms that can be used to identify an account holder's location.

**History:** *2024 c 114 art 3 s 65*

**NOTE:** This section, as added by Laws 2024, chapter 114, article 3, section 65, is effective July 1, 2025. Laws 2024, chapter 114, article 3, section 65, the effective date.

**325M.33 TRANSPARENCY REQUIREMENTS FOR SOCIAL MEDIA PLATFORMS.**

A social media platform must publicly and conspicuously post the following information on the social media platform's website:

(1) an explanation of how the social media platform limits excessive account interactions, including:

(i) the maximum limit on the number of times that a user can engage in each specific kind of account interaction in an hour, day, week, and month; and

(ii) whether and how the platform engages in any reduction in the ability of accounts to affect other users when the user engages in a high number of account interactions that is below the maximum limit;

(2) an explanation detailing how the platform:

(i) assesses the quality of content;

(ii) assesses users' expressed preferences regarding content; and

(iii) utilizes the assessments under items (i) and (ii) in each of the social media platform's algorithmic ranking system, including how the assessments are weighted in relation to other signals in the algorithmic ranking system;

(3) statistics on the platform's use with respect to the tenth, 25th, 50th, 75th, 90th, 95th, 99th, and 99.9th percentile of all platform account holders for each distinct type of account interaction or engagement, including but not limited to:

(i) sending invitations or messages to other platform account holders;

(ii) commenting on, resharing, liking, voting for, or otherwise reacting to content;

(iii) posting new user-generated content;

(iv) disseminating user-generated content to other platform account holders; and

(v) time spent on the platform;

(4) an explanation of how the platform determines whether a notification is time sensitive and how many time-sensitive and non-time-sensitive notifications are sent to users including:

(i) how many time-sensitive and non-time-sensitive notifications are sent with respect to the tenth, 25th, 50th, 75th, 90th, 95th, 99th, and 99.9th percentile of all platform account holders in a given day; and

(ii) how many time-sensitive and non-time-sensitive notifications are sent with respect to the tenth, 25th, 50th, 75th, 90th, 95th, 99th, and 99.9th percentile of all platform account holders during each hour between the hours of 11:00 p.m. and 7:00 a.m.; and

(5) a description of all product experiments that have been conducted on 1,000 or more users, including a description of the experimental conditions and the results of the product experiment for all experimental conditions on users' viewing or engaging with content that:

(i) users indicate to be high or low quality;

(ii) users indicate complies or does not comply with the users' expressed preferences; or

(iii) violates platform policies.

**History:** *2024 c 114 art 3 s 66*

**NOTE:** This section, as added by Laws 2024, chapter 114, article 3, section 66, is effective July 1, 2025. Laws 2024, chapter 114, article 3, section 66, the effective date.

**325M.34 ENFORCEMENT AUTHORITY.**

(a) The attorney general may investigate and bring an action against a social media platform for an alleged violation of section 325M.33.

(b) Nothing in sections 325M.30 to 325M.34 creates a private cause of action in favor of a person injured by a violation of section 325M.33.

**History:** *2024 c 114 art 3 s 67*

**NOTE:** This section, as added by Laws 2024, chapter 114, article 3, section 67, is effective July 1, 2025. Laws 2024, chapter 114, article 3, section 67, the effective date.